UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| WILLIAN ALBERTO GIMENEZ GONZALEZ,<br><br>Petitioner,<br><br>v.<br><br>KEVIN RAYCRAFT, et al.<br>Respondent. | Case No. 25-cv-13094<br>Honorable Shalina D. Kumar<br>Magistrate Judge Kimberly G. Altman |

## OPINION AND ORDER GRANTING THE PETITION FOR A WRIT OF HABEAS CORPUS (ECF NO. 1)

### I.     Introduction

Petitioner Willian Alberto Gimenez Gonzalez ("Gimenez Gonzalez" or "Petitioner") filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241, alleging that he is being unlawfully detained by the Respondents at the North Lake Processing Center in Baldwin, Michigan in violation of the Immigration and Nationality Act ("INA") and the Due Process clause of the Fifth Amendment. *See generally*, ECF No. 1.

Respondents, who include Secretary of the United States Department of Homeland Security ("DHS"), Kristi Noem ("Noem"), United States Attorney General, Pamela Bondi ("Bondi"), Executive Office for Immigration

Review ("EOIR"), along with Immigration and Customs Enforcement ("ICE")

Detroit Field Office Director, Kevin Raycraft ("Raycraft"), argue that

Petitioner's detention is not unlawful under the INA, specifically 8 U.S.C. §

1225(b)(2), and does not violate his Due Process rights. Respondents also

urge the Court to refrain from deciding the merit of the petition until

Gimenez Gonzalez administratively exhausts his claims and to dismiss all

Respondents other than Raycraft. *See generally*, ECF No. 7.

The Court has reviewed the parties' filings and is satisfied that the

issues have been adequately briefed thereby making a hearing

unnecessary. *See* E.D. Mich. L.R. 7.1(f)(2). For the reasons set forth below,

the Court grants Gimenez Gonzalez's petition and orders Respondents to

provide him with a bond determination hearing[1] within seven (7) days of

this Order, or otherwise release him.

---

[1] According to Respondents, Gimenez Gonzalez was scheduled for a master calendar and bond hearing on October 8, 2025. The parties did not update the Court as to the outcome of that hearing, but the Court presumes that, if the bond hearing was held, the immigration court would have decided it was without jurisdiction to consider bond under § 1225(b)(2), which mandates detention pending the conclusion of his removal proceedings. In that event, the Court's order for a bond determination hearing should be considered an order for a bond redetermination hearing.

## II.    Background

Petitioner is a Venezuelan citizen who arrived in the United States in October 2023. ECF No. 1.[2] Gimenez Gonzalez is an asylum seeker who lived and worked in Chicago, Illinois until his arrest by ICE on September 12, 2025.  That afternoon, Gimenez Gonzalez was stopped by ICE agents while outside a barber shop in Chicago's Little Village neighborhood with his wife. Upon confirming his identity, he was immediately taken into custody without explanation.

Gimenez Gonzalez was initially detained in Illinois but was transferred the following day to North Lake Correctional Facility in Baldwin, Michigan, where he remains in custody. According to the petition, Respondents have not given Petitioner the opportunity to post bond or be released on other conditions. Gimenez Gonzalez asserts that he has consistently worked in construction and maintenance and is a member of both a union and an Episcopal church in Chicago. Petitioner has no criminal record beyond traffic violations and a trespassing charge that was dismissed by the prosecutor.

---

[2] Gimenez Gonzalez's petition is the source of these facts. *See* ECF No. 1. Respondents do not dispute them. *See* ECF No. 7.

Petitioner's Illinois counsel, believing Gimenez Gonzalez was still being detained in Illinois, filed a habeas petition in the district court for the Northern District of Illinois. That court transferred the petition to the Western District of Michigan. Because the proper respondent for an immigration-related habeas petition is the director for the ICE field office where the detention facility is located, Gimenez Gonzalez's first habeas petition became procedurally defective upon transfer. Accordingly, he voluntarily dismissed the Western District of Michigan petition and filed the petition now before this Court.

## III.    Discussion

### A. Legal Standard

Habeas relief may be granted when a person is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Federal district courts are limited in their relief under § 2241 when considering immigration cases. *Morales Chavez v. Director of Detroit Field Office,* 2025 WL 2959617, at *3 (N.D. Ohio Oct. 20, 2025). Although district courts may not grant habeas relief as to the underlying immigration question, i.e., whether removal is proper, district courts may review whether an alien is lawfully detained; the Attorney General and DHS

4

immigration authority does not abrogate § 2241's authority to grant the writ within these bounds. *See Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 117 (2020) (describing habeas corpus as the appropriate remedy to determine the legality of a person's custody). As noted above, Petitioner asserts that his detention pending the resolution of his removal proceedings violates both the INA and the Fifth Amendment.

### B. Administrative Exhaustion

Respondents first argue that the Court should require Gimenez Gonzalez to exhaust his administrative remedies before he is permitted to proceed with his habeas petition.

No applicable statute or rule requires administrative exhaustion here. *See Lopez-Campos v. Raycraft*, 2025 WL 2496379, at *4, ___ F. Supp. 3d ___ (E.D. Mich. Aug. 29, 2025). When Congress has not mandated exhaustion, the decision to require it is within the sound discretion of the court. *See Shearson v. Holder*, 725 F.3d 588, 593 (6th Cir. 2013). Known as prudential exhaustion, the court-made doctrine "must comport with the statutory scheme and congressional intent." *Pizarro Reyes v. Raycraft*, 2025 WL 2609425, at *3 (E.D. Mich. Sept. 9, 2025) (citing *Island Creek*

*Coal Co. v. Bryan*, 937 F.3d 738, 747 (6th Cir. 2019) and *Shearson*, 725

F.3d at 593-94).

> Courts may require prudential exhaustion when:
>
> (1) agency expertise makes agency consideration necessary to
> generate a proper record and reach a proper decision;
> (2) relaxation of the requirement would encourage the
> deliberate bypass of the administrative scheme; and
> (3) administrative review is likely to allow the agency to correct
> its own mistakes and to preclude the need for judicial review.

*Lopez-Campos*, 2025 WL 2496379, at *4. But, even if prudential

exhaustion would otherwise apply, courts may waive such exhaustion if the

"pursuit of administrative remedies would be a futile gesture" or if the

petition presents a "legal question…fit for resolution and delay means

hardship." *Shearson*, 725 F.3d at 594; *Shalala v. Ill. Council on Long Term

Care, Inc.*, 529 U.S. 1, 13 (2000).

"The Sixth Circuit has not decided whether courts should impose

administrative exhaustion in the context of a noncitizen's habeas petition

for unlawful mandatory detention." *Pizarro Reyes*, 2025 WL 2609425, at *3.

(citing *Hernandez v. U.S. Dep't of Homeland Sec.*, 2025 WL 2444114, at *8

(N.D. Ohio Aug. 25, 2025)). Consequently, courts within the circuit are split.

Compare *id*.; *Lopez-Campos*, 2025 WL 2496379, at *4-5; *Sanchez Alvarez*

6

*v. Noem*, 2025 WL 2942648, at *3 (W.D. Mich. Oct. 17, 2025); and *Mejia v. Woosley*, 2025 WL 2933852, at *2-3 (W.D. Ky. Oct. 15, 2025) (declining to enforce or excusing petitioners from prudential exhaustion) to *Hernandez*, 2025 WL2444114, at *8-10 and *Villata v. Greene*, 2025 WL 2472886, at *2 (N.D. Ohio Aug. 5, 2025) (imposing prudential exhaustion requirements).

The Court agrees with the majority of the district courts in this circuit and around the nation in deciding not to enforce an exhaustion of administrative remedies requirement for these petitions. *See Casio-Mejia v. Raycraft*, 2025 WL 2976737, at *5 (E.D. Mich. Oct. 21, 2025) (collecting cases). To start, all three of the factors the Court is to consider weigh against imposing prudential exhaustion. First, the issues raised by the habeas petition are purely legal questions and do not require the agency to develop a record. *See Contreras-Cervantes v. Raycraft*, 2025 WL 2952796, at *5 (E.D. Mich. Oct. 17, 2025). Further, a bond appeal to the Board of Immigration Appeals ("BIA") is not required for Gimenez Gonzalez's due process claim because the BIA cannot review constitutional challenges. *See Sterkaj v. Gonzalez*, 439 F.3d 273, 279 (6th Cir. 2006). Finally, the BIA

has conclusively rejected Petitioner's argument, precedentially deciding[3]

that a noncitizen who has been present in the United States for a period of

years or decades without inspection or authorization is an "applicant for

admission" under § 1225(a)(1) and thus subject to mandatory detention

during removal proceedings under that section. *See Matter of Yajure*

*Hurtado*, 29 I&N Dec. 216 (2025); *see also Casio-Mejia*, 2025 WL 2976737,

at *4 (noting that *Yajure Hurtado* is binding on DHS and immigration courts,

but not on district courts). Accordingly, and as Respondents admit,

Gimenez Gonzalez is unlikely to obtain the relief he seeks through the

administrative process, and any appeal of bond determination to the BIA

will not preclude but merely delay the need for judicial review. Because

administrative review in this instance would be futile, and because every

additional day in unlawful detention presents a hardship for Petitioner, the

Court declines to impose an exhaustion requirement upon Gimenez

Gonzalez and will address the merits of his petition. *See Lopez-Campos*,

2025 WL 2496379, at *5.

---

[3] The BIA may designate a decision as precedential. BIA precedential
decisions "serve as precedents in all proceedings involving the same issue
or issues." 8 C.F.R. 1003.1(g)(2).

### C. Applicable INA Provision

Under the general provisions of the INA, an "alien who arrives at a 'port of entry,' i.e., a place where an alien may lawfully enter, must apply for admission." *Thuraissigiam*, 591 U.S. at 108. Aliens who are detained trying to enter elsewhere are treated similarly. *Id*.(citing 8 U.S.C. §§ 1225(a)(1), (3)). However, "several classes of aliens are 'inadmissible' and therefore 'removable.'" *Id*. at 107-08 (2020)(quoting 8 U.S.C. §§ 1182, 1229a(e)(2)(A)).

The removal process provides for an evidentiary hearing before an immigration judge, where the alien may challenge their removal, including applying for asylum. *Id.* (internal citations omitted). Should their challenge be rejected, the alien may appeal the removal order to the BIA and may also be entitled to review in a federal court of appeals. *Id*. While his removal proceedings are being litigated, the alien will generally be detained. *Id*. However, the classification of the alien determines whether that detention is mandatory or discretionary. Compare 8 U.S.C. §§ 1225(b)(2)(A) with 1226(a).

The interplay of these statutes, which both govern detention of noncitizens pending removal proceedings, controls the outcome of the

petition before the Court. Section 1225 governs the expedited removal

process and requires mandatory detention under its provisions, while §

1226 permits discretionary release from detention for certain aliens.

*Morales Chavez*, 2025 WL 29596, at *3. Respondents contend that §

1225(b)(2) applies to Petitioner, thereby subjecting him to mandatory

detention. ECF No. 7. Gimenez Gonzalez, however, maintains that

§ 1226(a), not § 1225(b)(2), governs his removal proceedings and he is

thus entitled to a bond determination hearing. *See* ECF Nos. 1, 8.

Section 1225, titled "Inspection by immigration officers; expedited

removal of inadmissible *arriving* aliens; referral for hearing," provides that,

upon *arrival*, all applicants for admission must undergo screening by an

examining immigration officer, and if it is determined that the applicant for

admission "is not clearly and beyond a doubt entitled to be admitted," the

applicant "*shall* be detained for" standard removal proceedings. 8 U.S.C. §

1225(b)(2)(A) (emphasis added). Section 1226, titled: "Apprehension and

detention of aliens," provides for a discretionary detention framework, and

states, in relevant part: an alien may be arrested and detained pending a

decision on whether the alien is to be removed from the United States.

Except as provided in subsection (c) and pending such decision, the

10

arrested alien may remain detained or may be released on bond. 8 U.S.C.
§ 1226(a). Subsection (c) of § 1226 prohibits noncitizens who have been
charged with, arrested for, convicted of, or have admitted to committing
acts which constitute the essential elements of any burglary, theft, larceny,
shoplifting, or assault of a law enforcement officer offense, or any crime
that results in death or serious bodily injury to another person from being
released on bond. 8 U.S.C. § 1226(c). Relevant here, noncitizens arrested
and detained under Section 1226 have a right to request a custody
redetermination (i.e., a bond hearing) before an Immigration Judge. *Santos
Franco v. Raycraft*, 2025 WL 2977118, at *4 (E.D. Mich. Oct. 21, 2025)
(citing 8 C.F.R. §§ 1236.1(c)(8), (d)(1)).

Gimenez Gonzalez contends that his continued detention is unlawful
because he was not released or provided with a bond hearing as required
by § 1226(a). Respondents argue that § 1226(a) does not apply, and that
he is lawfully detained under § 1225(b)(2). As more than 30 district courts
have decided in "reviewing the statutory text, statutory history,
congressional intent, and statutory application for the last three decades,"
Gimenez Gonzalez's detention is governed by § 1226(a). *Jimenez Garcia v.*

11

*Raybon*, 2025 WL 2976950, at *4 (E.D. Mich. Oct. 21, 2025) (cleaned up) (collecting cases).

This multitude of district courts has explained that § 1225(b)(2) applies to arriving aliens undergoing inspection, which generally occurs at the United States' border or ports of entry, when they are seeking lawful entry into the United States." *Sanchez Alvarez*, 2025 WL 2942648, at *5. In contrast, § 1226(a) applies to a noncitizen already residing within the United States when apprehended and arrested. *Jiminez Sanchez*, 2025 WL 2976950, at *4 (quoting *Lopez-Campos*, 2025 WL 2496379, at *8).

This Court agrees with the majority viewpoint in finding that § 1226(a), not § 1225(b)(2), applies to noncitizens such as Petitioner. Neither DHS's decision to upend 30 years of reasoned statutory interpretation, the BIA's precedential decision sustaining the DHS about-face, nor the fractional minority of district court cases[4] finding § 1225(b)(2) applicable to noncitizens like Petitioner persuade the Court otherwise. *See Yajure Hurtado*, 29 I&N Dec. 216; *Chavez v. Noem*, 2025 WL 2730228, ___ F.

---

[4] Only two of at least 36 district courts to have addressed this issue have held that § 1225(b)(2) applies to those in the same circumstances as Petitioner. *See infra*, n. 5.

12

Supp. 3d ___(S.D. Cal. Sep. 24, 2025) (adopting *Yajure Hurtado*'s statutory

interpretation to find § 1225(b)(2) applicable to noncitizens long present in

the United States) and *Vargas Lopez v. Trump*, 2025 WL 2780351 (D. Neb.

Sep. 20, 2025) (concluding that aliens may be subject to both § 1225(b)(2)

and § 1226(a) and that DHS may choose which statute to rely upon in

detaining an alien subject to removal).

As previously noted, BIA decisions are not binding on the Court. Nor

is the Court bound by the aberrant holdings of the two outlying cases

concluding that § 1225(b)(2) applies rather that § 1226(a). These cases,

from out-of-circuit district courts, not only contradict cases within the same

district, compare *Vargas Lopez*, 2025 WL 2780351 to *Garcia Jiminez v.

Kramer*, 2025 WL 2374223 (D. Neb. Aug. 14, 2025) and *Jacinto v. Trump*,

2025 WL 2402271 (D. Neb. Aug. 19, 2025), or those from sister district

courts within the same state, compare *Chavez*, 2025 WL 2730228 to

*Arrazola-Gonzalez v. Noem*, 2025 WL 2379285 (C.D. Cal. Aug. 15, 2025),

*Lepe v. Andrews*, 2025 WL 2716910, ___ F. Supp. 3d. ___ (E.D. Cal. Sep.

23, 2025) and *Cordero Pelico v. Kaiser*, 2025 WL 2822876 (N.D. Cal. Oct.

3, 2025), but also conflict with the growing number of decisions from district courts nationwide.[5]

Gimenez Gonzalez has resided in the United States for two years and was apprehended outside his neighborhood barber shop, not upon arrival at the border or a port of entry. Thus, under § 1226(a), Petitioner is

---

[5] *See, e.g.*, *Echevarria v. Bondi*, 2025 WL 2821282 (D. Ariz. Oct. 3, 2025); *Loa Caballero v. Baltazar*, 2025 WL 2977650 (D. Colo. Oct. 22, 2025); *Lopez v. Hardin*, 2025 WL 2732717 (M.D. Fla. Sep. 25, 2025); *Puga v. Ass't Field Office Director*, 2025 WL 2938369 (S.D. Fla. Oct. 15, 2025); *Mariano Miguel v. Noem*, 2025 WL 2976480 (N.D. Ill. Oct. 21, 2025); *Alejandro v. Olson*, 2025 WL 2896348 (S.D. Ind. Oct. 11, 2025); *Giron Reyes v. Lyons*, 2025 WL 2712427, ___ F. Supp. 3d ___ (N.D. Iowa Sep. 23, 2025); *Helbrum v. Olson*, 2025 WL 2840273 (S.D. Iowa Sep. 30, 2025); *Barerra v. Tindall*, 2025 WL 2690565 (W.D. Ky. Sep. 19, 2025); *Kostak v. Trump*, 2025 WL 2472136 (W.D. La. Aug. 27, 2025); *Chogllo Chafla v. Scott*, 2025 WL 2688541 (D. Me. Sep. 22, 2025); *Maldonado de Leon v. Baker*, 2025 WL 2968042 (D. Md. Oct. 21, 2025); *Sampiao v. Hyde*, 2025 WL 2607924, ___ F. Supp. 3d ___ (D. Mass. Sep. 9, 2025); *Maldonado v. Olson*, 2025 WL 2374411, ___ F. Supp. 3d ___ (D. Minn. Aug. 15, 2025); *Vazquez v. Feeley*, 2025 WL 2676082 (D. Nev. Sep. 17, 2025); *Jimenez v. FCI Berlin*, 2025 WL 2639390, ___ F. Supp. 3d. ___ (D.N.H. Sep. 8, 2025); *Zumba v. Bondi*, 2025 WL 2753496 (D.N.J. Sep. 26, 2025); *Salazar v. Dedos*, 2025 WL 2676729 (D.N.M. Sep. 17, 2025); *Hyppolite v. Noem*, 2025 WL 2829511 (E.D.N.Y. Oct. 6, 2025); *Lopez Benitez v. Francis*, 2025 WL 2371588 (S.D.N.Y. Aug. 13, 2025); *Mata Velasquez v. Kurzdorfer*, 2025 WL 1953796 (W.D.N.Y. July 16, 2025); *S.D.B.B. v. Johnson*, 2025 WL 2845170 (M.D.N.C. Oct. 7, 2025); *Padron Covarrubias v. Vergara*, 2025 WL 2950097 (S.D. Tex. Oct. 8, 2025); *Gonzalez Martinez v. Noem*, 2025 WL 2965859 (W.D. Tex. Oct. 21, 2025); *Quispe v. Crawford*, 2025 WL 2783799 (E.D. Va. Sep. 29, 2025); *Rodriguez v. Bostock*, 2025 WL 278499, ___ F. Supp. 3d ___ (W.D. Wash. Sep. 30, 2025).

entitled to a discretionary bond determination hearing. And because

Gimenez Gonzalez has been detained without having received such a

hearing, he is in federal custody in violation of federal law. Thus, his

habeas petition will be granted, and Respondents will be directed to

provide Gimenez Gonzalez with a bond hearing under § 1226(a) on or

before November 3, 2025, or otherwise release him.

### D.    Fifth Amendment Due Process

Given that this Court is granting the relief Petitioner requests based

on its interpretation of the applicability of § 1226(a), the Court will decline to

decide the merits of Gimenez Gonzalez's due process claim. *See Pizarro*

*Reyes*, 2025 WL 2609425, at *8. If Respondents do not provide Gimenez

Gonzalez with a bond determination hearing or release him by November

3, 2025, he may renew his Fifth Amendment Due Process claim.

### E.    Proper Respondents

Finally, Respondents contend that only Petitioner's immediate

custodian, here Raycraft, is a proper respondent in this habeas case. *See*

*Roman v. Ashcroft*, 340 F.3d 314, 320 (6th Cir. 2003). Indeed, the Sixth

Circuit concluded in *Roman* that "the immediate custodian rule generally

applies to alien habeas corpus petitioners." 340 F.3d at 322. But it also

noted possible exceptions to this rule. *Sanchez Alvarez*, 2025 WL 2942648, at *9 (quoting *Roman*, 340 F.3d at 322).

Detained aliens may be transferred to detention facilities in other districts, and such transfers may be used to deny aliens any meaningful opportunity to seek habeas relief. *Id*. (quoting *Roman*, 340 F.3d at 326). Thus, courts have allowed an alien to "name a respondent other than his immediate custodian because a petition naming a higher level official, such as the Attorney General, could be adjudicated without interruption in the event of a transfer." *Roman*, 340 F.3d at 326.

To ensure that Respondents maintain authority to enforce this Court's grant of habeas relief and order that Petitioner receive a bond hearing or, alternatively, be released even if Petitioner is transferred out of the district under Raycraft's control, the Court will not dismiss Attorney General Bondi as a Respondent to these proceedings. *See Sanchez Alvarez*, 2025 WL 2942648, at *9; *see also Lee v. Ashcroft*, 216 F. Supp. 2d. 51, 55 (E.D.N.Y. 2002) (transfer of immigration detainees under the control of the Attorney General).

**IV. Conclusion**

For the reasons discussed, the Court **GRANTS** Gimenez Gonzalez's petition for habeas relief. ECF No. 1.

To that end, the Court **ORDERS**:

1. Respondent Raycraft to provide Gimenez Gonzalez with a bond hearing under § 1226(a) on or before **November 3, 2025**, or otherwise release him; and

2. Respondent Raycraft to file a status report to certify compliance with this order on or before **November 5, 2025**. The status report shall detail when Gimenez Gonzalez was released or when his bond hearing occurred, if bond was granted or denied, and—if bond was denied—the reasons for the denial.

The Court further **ORDERS** that Respondents Raycraft and Bondi will remain respondents in this action, but all other Respondents are **DISMISSED**.

**IT IS SO ORDERED**.

s/Shalina D. Kumar
SHALINA D. KUMAR
United States District Judge

Dated:  October 27, 2025

17